UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BILL JOE LANE,

               Plaintiff,

     v.

WASHINGTON STATE DEPARTMENT
OF CORRECTIONS, et al.,

               Defendants.

Case No. C18-5666-RBL-TLF

REPORT AND
RECOMMENDATION

Noted for <u>December 6, 2019</u>

This matter is before the Court on defendants' motion for summary judgment. Dkt. 32. Plaintiff has brought suit against defendants for alleged violations of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") and causes of action under 42 U.S.C. §§ 1983 and 1985. Dkt. 47. Plaintiff names as defendants: the Washington State Department of Corrections (DOC), DOC Secretary Stephen Sinclair, Associate Superintendent ADA Coordinator A. Sawyer, ADA Associate J. Gurr, and Psychology Associate, G. Humes.[1] *Id.*

Plaintiff is an inmate at Coyote Ridge Corrections Center (Coyote Ridge CC). Dkt. 47. Plaintiff's claims relate to the denial of his request -- based on his claimed mental health disability -- for an ADA accommodation for him to access certain areas of Coyote Ridge CC

---

[1] The record shows that the defendants plaintiff identified in his second amended complaint as "A. Sawyer, J. Gurr, and G. Humes," are Andrew Sawyer, Julie Nickerson, and George Humes. Throughout this document the Court will use these names.

1   (specifically, the yard, gym and library) at designated times when fewer individuals are present.

2   *Id.* This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W.*

3   *v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the

4   reasons set forth below, the undersigned recommends the Court GRANT defendants' motion

5   (Dkt. 32) and dismiss plaintiff's complaint.

6   <u>FACTUAL AND PROCEDURAL HISTORY</u>

7       Plaintiff's second amended complaint alleges he has been diagnosed with Post-traumatic

8   Stress Disorder (PTSD) and anxiety disorder with agoraphobia which causes him extreme social

9   anxiety. *Id*. He contends it is often overwhelming for him to be in crowds. *Id.* He alleges Coyote

10  Ridge CC has an ADA program where persons with disabilities receive special outdoor and

11  indoor recreation times and special library times. *Id.* He contends he applied, but defendants

12  conspired to deny him access to this program in violation of the ADA, the RA, and 42 U.S.C. §§

13  1983 and 1985. *Id.* Plaintiff alleges defendants' actions also violated his Eighth Amendment

14  rights because his "inability to participate in outdoor recreation, exercise, has caused [him]

15  depression, muscle wasting, advanced aging, arthritis in his knees and hips, loss of cardiological

16  and pulmonary function and capacity, overall weakening of the body, lethargic thought process,

17  mental/emotional distress." *Id.*

18      Defendants, in support of their motion for summary judgment, present evidence that

19  Coyote Ridge CC provides an accommodation available to individuals who cannot make it to the

20  weight deck, gym, or library before those areas reach capacity. Dkt. 33, Declaration of Andrew

21  Sawyer, at ¶ 7. The weightlifting area, or weight deck, at Coyote Ridge CC has a capacity limit

22  of 25. *Id.* The gym has a capacity limit of 100, and the library has a capacity limit of 32. *Id.* The

23  weight deck and gym areas are sometimes referred to as "rec" or recreation. *Id.* According to

24  defendants, the purpose of the accommodation is to allow approved individuals to access those

25

areas even if the areas have reached the stated capacity because a few extra individuals can be accommodated safely in those areas. *Id.*

The outdoor yard area has no capacity limit. *Id.* According to defendants, there used to be a unit-level signup at Coyote Ridge CC available for people to apply for special yard access. *Id.*, at ¶ 10. This process allowed for up to 8 people per unit to sign up for special yard, with a maximum of 64 people total in the special yard time. *Id.*

However, according to defendants, this process was discontinued around March 2018 because it did not really work out well or serve its intended purpose in practice. *Id.*, at ¶ 10, 11. Specifically, some individuals who did not need special access were nevertheless signing up and exploiting the process, including a number of security threat group members (gang members). *Id.* Defendants also indicate that because there is no limit on the number of people that can access the outdoor yard area, there was no need to keep any sort of special access available. *Id.*

Thus, according to defendants, as of March 2018, there was no longer any special yard access or accommodation available for the outdoor yard. Dkt. 33, Sawyer Decl. at ¶ 7, 11. Defendants indicate this is because there is no capacity limit for the outdoor yard, so even if an individual moves slowly he will be able to access the area once he makes it there, unlike other areas where there is a capacity limit. *Id.*

Plaintiff disputes that there is no longer any specific accommodation available for the outdoor yard area; plaintiff submits declarations from other inmates stating that there continued to be an "ADA accommodation" for outdoor yard after March 2018 and as late as February 2019. Dkt. 38, at 59-63.

Defendants also present evidence regarding the process for requesting an ADA accommodation at Coyote Ridge CC. If an individual requests an ADA accommodation, he is

1    told to bring this to the attention of his counselor. Dkt. 33, Sawyer Decl., at ¶ 5. Some requests

2    can be handled locally at the facility and some requests need approval from the statewide ADA

3    Compliance Manager. *Id.* As the Coyote Ridge CC ADA Coordinator, Associate Superintendent

4    Sawyer generally makes the decision for local accommodation requests. *Id.* If an individual

5    disagrees with a local determination, he could appeal that decision, which would go to the

6    Coyote Ridge CC Superintendent, and would probably be discussed with the statewide ADA

7    Compliance Manager. *Id.*

8        In August 2017, plaintiff sent a kiosk message to defendant Julie Nickerson and

9    requested  to be placed on a callout for the ADA "yard and library." Dkt. 34, Decl. Julie

10   Nickerson, at 1-5. Defendant Nickerson was a member of the ADA Committee at Coyote Ridge

11   CC at the time. *Id.*

12       Defendant Nickerson responded to plaintiff that callouts were handled at the unit level,

13   (which, she asserts, was true at the time) and that he should speak with his counselor. *Id.* On

14   September 11, 2017, plaintiff submitted another kiosk message to defendant Nickerson asking

15   how to file an ADA complaint. *Id.* Nickerson responded by asking about the nature of his

16   complaint and offering to meet with him to discuss his concerns. *Id.* Plaintiff responded that he

17   felt his disability was being ignored and that he was not allowed to participate in ADA activities.

18   *Id.* Defendant Nickerson responded that ADA yard and library were controlled by plaintiff's unit

19   and that he should discuss the issue with his counselor. *Id.* She also noted in her reply that

20   plaintiff had a very low disability code and no health status reports (HSRs), which DOC uses to

21   note special medical items or accommodations an offender is authorized to have. *Id.*

22       On September 19, 2017, plaintiff again sent a kiosk message to defendant Nickerson

23   stating he wanted to make an ADA complaint. *Id.* Defendant Nickerson indicates in her

24

25

REPORT AND RECOMMENDATION - 4

declaration that she believed it would be beneficial to meet with plaintiff regarding his concerns, because he had sent numerous kiosk messages; she scheduled an in-person meeting. *Id.* She states that upon meeting with plaintiff she informed him that she was not the ADA coordinator and was simply part of the ADA Committee. *Id.*

She indicates that during the meeting she informed plaintiff that, with his permission, she would discuss his issue with his mental health provider, George Humes, as well as his medical provider. *Id.* Defendant Nickerson states that she told plaintiff she would relay the information she received, along with plaintiff's concerns to the ADA Committee, Coyote Ridge CC's ADA coordinator, Andrew Sawyer, and, if needed, the statewide ADA Compliance Manager.[2] *Id.* Defendant Nickerson asserts she neither made any determination regarding plaintiff's requests for ADA recreation and gym at the time, nor was she the person who had authority to make those decisions regarding approval or denial of local accommodation requests; she merely gathered information. *Id.*

Defendant Nickerson spoke with plaintiff's mental health provider, Dr. George Humes, regarding plaintiff's complaints about his mental health issues and whether plaintiff required an ADA accommodation. *Id.* Dr. Humes (also named as a defendant) was plaintiff's primary mental health therapist at the time; he informed defendant Nickerson that based on his assessments, he believed it would benefit plaintiff to be around people as a positive treatment plan and noted that plaintiff functions well in the very crowded Coyote Ridge CC medical waiting room. *Id.*; Dkt. 35, Decl. of Dr. George Humes, at ¶¶ 2-3. Dr. Humes further told defendant Nickerson that while certain stages of agoraphobia may be covered by the ADA, plaintiff was fully functional and able

---

[2] Plaintiff disputes that he gave defendant Nickerson permission or asked her to discuss his mental health issues with Dr. Humes. Dkt. 38, at 85.

to go outside, to the dayroom, the mainline, and other appointments as needed without showing extreme symptoms. *Id.*

In his declaration, Dr. Humes further states that, although plaintiff has a prior agoraphobia diagnosis, it is his opinion that plaintiff does not meet the criteria of the Diagnostic and Statistical Manual 5th Edition (DSM-5) for an agoraphobia with panic disorder diagnosis and does not require any accommodations for any form of mental health related disability. Dkt. 35, Humes Decl., at ¶ 3. Dr. Humes states he has explained to plaintiff, as he conveyed to defendant Nickerson, that agoraphobia with panic disorder may qualify as a disability under the ADA, but it falls on a continuum of severity. *Id.*, at ¶ 4. Dr. Humes states it is his opinion that plaintiff would be a functional agoraphobic, if he has the disorder at all. *Id.*

Dr. Humes states he has explained to plaintiff that if his symptoms were severe, he would have significant difficulty even being in the day room,  the dining hall, or  the medical unit. *Id.* Dr. Hume states that plaintiff does not exhibit any panic or anxiety attacks when going from the unit to the dining facility or call outs and he does not exhibit any signs or symptoms of increased anxiety while in the waiting room of the medical building. *Id.* He further states that plaintiff never exhibited any signs or symptoms of increased anxiety in the office during any sessions. *Id.* Dr. Humes states it is his opinion that, as long as plaintiff is compliant with treatment, his symptoms are not severe enough to warrant special accommodations for recreation or gym. *Id.*, at Exhibit 1.

Additionally, Dr. Humes states that part of treating agoraphobia is desensitization, or exposure therapy, and that while most treated with agoraphobia with panic disorder are gradually introduced to exposure of the noxious stimuli over time, this would not need to be the case for plaintiff as he does not experience any anxiety attacks, nor any signs or symptoms when in such

areas. *Id.*, at ¶ 5. Dr. Humes states that severe agoraphobia is a disability because it inhibits

normal functioning on a day-to-day basis in multiple areas of life. *Id.*, ¶ 7. Dr. Humes states that

in plaintiff's case, he is able to do things necessary for functioning on a day-to-day basis without

exhibiting symptoms. *Id.*, ¶ 7. Dr. Humes further states that any potential consequences of not

participating in what is readily available to plaintiff would be entirely due to his own choices and

not the result of any mental health related problems. *Id.*, at ¶ 8.

Around September 28, 2017, defendant Nickerson informed the ADA Coordinator,

defendant Sawyer, and others involved that she had spoken with Dr. Humes regarding plaintiff's

mental health concerns. Dkt. 34, Nickerson Decl., at ¶ 7. She reported that Dr. Humes had stated

that while certain stages of agoraphobia can land under the ADA, plaintiff is fully functional and

able to go outside, to the dayroom, to mainline, and to other appointments as needed without

showing extreme symptoms. *Id.*, at ¶ 7. She further reported that Dr. Humes had advised her that

exposure can help plaintiff's condition so that going to regular yard can be therapeutic for him.

*Id.* She also sent plaintiff a kite, explaining what she had learned about his request. *Id.*, at Exhibit

5. Defendant Nickerson states that this kite was not a formal denial, and it was sent on behalf of

the ADA Committee and the ADA Coordinator. *Id.* Defendant Nickerson states she had no

further involvement with plaintiff's request. *Id.*

In October 2017, plaintiff made a request for a local accommodation at Coyote Ridge CC

to access

the "ADA yard, gym and library." Sawyer Decl., at ¶ 6, Exhibit 1. Associate Superintendent

Sawyer reviewed this request and the Coyote Ridge CC ADA Committee gathered information

about plaintiff's circumstances. *Id.*, at ¶ 8. Defendant Sawyer indicates the Committee

considered the opinions of plaintiff's mental health providers that plaintiff was functional, would

1   benefit from participating in yard and other activities with other offenders, and did not need an

2   accommodation for these activities. *Id.*, at ¶ 8. For that reason, and because plaintiff had no

3   difficulty making it to these areas, defendant Sawyer indicates plaintiff's request for a local

4   accommodation was denied on November 1, 2017. *Id.*, at ¶ 8, Exhibit 1.

5        On April 4, 2018, plaintiff sent another message to defendant Nickerson complaining that

6   he had been put on a callout for a "local accommodation." Dkt. 34, Nickerson Decl., at ¶ 8,

7   Exhibit 6. Defendant Nickerson states she did not know anything about the callout, but she

8   responded that plaintiff could sign up for a sick call if he still had concerns and that the ADA

9   Committee could review his request again if necessary. *Id.*

10       Plaintiff alleges that the November 1, 2017, denial of an ADA accommodation violates

11  the ADA, the RA, and his Eighth Amendment rights "by causing physical and emotional

12  damage," and that defendants engaged in a conspiracy to violate his civil rights under 42 U.S.C.

13  § 1985. Dkt. 47. Defendants now move for summary judgment on the grounds that the

14  undisputed record shows defendants did not violate of the ADA, RA, Eighth Amendment, or 42

15  U.S.C. § 1985. Dkt. 32.

16                                          DISCUSSION

17       Summary judgment is supported "if the pleadings, the discovery and disclosure materials

18  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

19  movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP)

20  56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute

21  of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute

22  concerning a material fact is presented when there is sufficient evidence for a reasonable jury to

23  return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253

24  (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose

25

existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.,* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon*, 698 F.3d 715, 728-29 (9th Cir. 2012).

I.    **Americans with Disabilities Act and Rehabilitation Act Claims**

Plaintiff alleges defendants violated his rights under the ADA and RA when they denied his request for an ADA accommodation for him to access certain areas of Coyote Ridge CC (specifically, the yard, gym and library) at designated times when fewer individuals are present. Dkt. 47. Title II of the ADA and § 504 of the RA prohibit discrimination on the basis of disability. The ADA applies only to public entities, while the RA applies to all federally funded

programs. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). There is no dispute that both of the Acts apply in the state prison context.  Dkt. 40 at 5; *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

Title II of the ADA provides in relevant part:

> . . . [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Section 504 of the RA provides:

> "No otherwise qualified individual with a disability in the United States, as defined in [29 U.S.C. § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

29 U.S.C. § 794(a). Title II of the ADA was "expressly modeled after § 504 of the Rehabilitation Act ... and essentially extends coverage to state and local government entities that do not receive federal funds." *Pierce v. County of Orange*, 526 F.3d 1190, 1216 n. 27 (9th Cir. 2008). "'There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.'" *Id.* (quoting *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999)).

An individual is disabled under the ADA if that individual: "(1) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) [has] a record of such an impairment; or (3) [is] regarded as having such an impairment as described in paragraph (l) of this section." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). Major life activities under the ADA include, but are not limited to: caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2).

"An impairment is a disability […] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Under the 2008 amendments to the ADA, the definition of "disability" must be "construed in favor of broad coverage of individuals" to the extent permitted. 42 U.S.C. § 12102(4)(A). "'Substantially limits' is not meant to be a demanding standard," and thus, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(i), (iii). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures [including…] medication[.]" 42 U.S.C. § 12102(4)(E); 29 C.F.R. § 1630.2(j).

An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2. An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment. 42 U.S.C. § 12102(4)(C); 29 C.F.R. § 1630.2.

To determine whether an impairment substantially limits an individual, a court considers "the nature, severity, duration, and impact of the impairment." *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003); *Bird v. California Dep't of Corr. & Rehab. (CDCR)*, No. 116CV01244AWIEPGPC, 2016 WL 7383307, at *3 (E.D. Cal. Dec. 21, 2016); *see also* 29 C.F.R. § 1630.2(j)(4)(i) (noting that consideration of the condition, manner, and/or duration of time it takes the individual to perform the major life activity, as compared to most people in the

general population, may be useful). "Whether a person is disabled under the ADA is an 'individualized inquiry.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

To prove his discrimination claim, plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); 42 U.S.C. § 12132. To recover for discrimination under the ADA, plaintiff bears the burden of proving he is disabled under the Act. *Bates v. United Parcel Serv.*, 511 F.3d 974, 988 (9th Cir. 2007) (quoting *Nunes v. Wal–Mart Stores*, 164 F.3d 1243, 1246 (9th Cir. 1999)). "A public agency may require reasonable evidence of a disability before providing accommodations [but] may not … insist on data supporting a claim of disability beyond that which would satisfy a reasonable expert in the field." *See Vinson v. Thomas,* 288 F.3d 1145, 1153 (9th Cir.2002).

A public entity can be liable for damages under Title II of the ADA or under the RA only "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons."[3] *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th

---

[3] The Court notes that a showing of deliberate indifference is not required for claims for injunctive relief but is required for claims for damages. *See, e.g.*, *Armbrester v. Alameda Cty.*, No. 17-CV-05231-LB, 2018 WL 5780044, at *4 (N.D. Cal. Nov. 1, 2018) (deliberate-indifference test required for ADA claims for money damages); *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1046 (C.D. Cal. 2008) ("Liability under the ADA ... can be established without a showing of discriminatory intent. To recover compensatory damages, however, intentional discrimination must be proven."). But here plaintiff's second amended complaint seeks only money damages for which a showing of deliberate indifference is required. *See* Dkts. 37, 47. Paragraph 14 of plaintiff's amended complaint seeking preliminary injunctive relief, (i.e., that he not be transferred to another prison during the pendency of the action) was

Cir. 2008). Deliberate indifference requires: (1) "knowledge that a harm to a federally protected right is substantially likely, and" (2) "a failure to act upon that the (sic) likelihood." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2008). The first prong is satisfied when the plaintiff identifies a "specific, reasonable and necessary" accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. *Id.*; *Updike v. Multnomah Cty.,* 870 F.3d 939, 951 (9th Cir. 2017), *cert. denied sub nom. Multnomah Cty., Or. v. Updike*, 139 S. Ct. 55, 202 L. Ed. 2d 19 (2018) (internal citations and quotations omitted).

The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. *Id.* at 1139–40. "To meet the second prong, the entity's failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Updike v. Multnomah Cty.,* 870 F.3d 939, 951 (9th Cir. 2017). The entity's duty is to undertake a fact-specific investigation to gather from the disabled individual and qualified experts sufficient information to determine what constitutes a reasonable accommodation, giving "primary consideration" to the requests of the disabled individual. *Duvall*, 260 F.3d at 1139. The second prong is not satisfied if the failure to fulfill this duty to accommodate is a result of mere negligence, such as "bureaucratic slippage," or where the entity simply "overlooked" a duty to act. *Id.*

Here, defendants present medical evidence from plaintiff's treating therapist at Coyote Ridge CC that plaintiff's mental health issues were not disabling because they did not substantially limit a major life activity. Defendant Dr. Hume indicates it is his opinion that

---

stricken from the second amended complaint as that request for relief had previously been denied in the order denying plaintiff's motion for preliminary injunction (Dkt. 37).

plaintiff does not have a disability or require the accommodation that he sought and, although plaintiff has a prior agoraphobia diagnosis, it is Dr. Humes' opinion that plaintiff does not meet the criteria of the Diagnostic and Statistical Manual 5th Edition (DSM-5) for an agoraphobia with panic disorder diagnosis; therefore Dr. Hume opines that plaintiff does not require any accommodations for any form of mental-health-related disability. Dkt. 35, Humes Decl., at ¶ 3. Dr. Humes states he has explained to plaintiff, and conveyed to defendant Nickerson, that agoraphobia with panic disorder may qualify as a disability under the ADA, but that it falls on a continuum of severity -- if plaintiff has the disorder at all, he would, for all intents and purposes, be a functional agoraphobic. *Id.* Dr. Humes states if plaintiff's symptoms were severe, he would have significant difficulty even being in the day room, let alone going to the dining hall, and going to the medical unit for his callouts; but plaintiff does not exhibit any panic or anxiety attacks when going from the unit to the dining facility or call outs and he does not exhibit any signs or symptoms of increased anxiety while in the waiting room of the medical building. *Id.* Defendant Dr. Humes further states that plaintiff has not exhibited any signs or symptoms of increased anxiety in the office during any sessions. *Id.*, at Exhibit 1.

Additionally, Dr. Humes states that part of treating agoraphobia is desensitization, or exposure therapy, and that while most treated with agoraphobia with panic disorder are gradually introduced to exposure of the noxious stimuli over time, this would not need to be the case for plaintiff -- because he does not experience any anxiety attacks, nor any signs or symptoms when in such areas. *Id.*, at ¶ 5. Dr. Humes states that severe agoraphobia is a disability because it inhibits normal functioning on a day-to-day basis in multiple areas of life. *Id.*, ¶ 7. Dr. Humes

states that, in plaintiff's case, he is able to do the things necessary to function on a day-to-day

basis without exhibiting symptoms. *Id.*, ¶ 7.[4]

Plaintiff, in opposition to defendants' motion, fails to raise a question of fact as to

whether he is a person with a disability as defined by the ADA, or that he "provided reasonable

proof of his disability" to the DOC. "A public agency may require reasonable evidence of a

disability before providing accommodations [but] may not … insist on data supporting a claim of

disability beyond that which would satisfy a reasonable expert in the field." *See Vinson v.*

*Thomas*, 288 F.3d 1145, 1153 (9th Cir. 2002). In his complaint, and in opposition to defendants'

motion plaintiff states he was previously diagnosed with PTSD[5], agoraphobia with panic

disorder, and that he gets anxious in crowds. Dkt. 47. Plaintiff also contends, generally, that he

---

[4] The Court notes that plaintiff challenges Dr. Humes' treatment notes from one of their sessions claiming he did not participate in the session apart from telling the doctor he had nothing to say to him. Dkt. 38, at 11-12. Plaintiff alleges this treatment note was created by Dr. Humes as a basis to deny him the ADA accommodation. *Id.* However, even excluding consideration of this treatment note, Dr. Humes' other treatment notes (which plaintiff does not specifically challenge or dispute) contain the same reasoning and support the same conclusions Dr. Humes reached in his declaration regarding plaintiff's mental health issues and his ability to function. See, e.g., Dkt. 35, Humes Decl., Exh. 1 (treatment note dated Sept. 27, 2017); Dkt. 38, at 51 (treatment note dated Nov. 22, 2017). Accordingly, plaintiff's challenge to one treatment note is insufficient to raise a genuine issue of material fact precluding summary judgment.

[5] 29 C.F.R. § 1630.2(j)(3) provides: "[T]he individualized assessment of some types of impairments will, *in virtually all cases*, result in a determination of coverage under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section. *Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity*. Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward. […] For example, applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: […] *post-traumatic stress disorder* […] substantially limit brain function." 29 C.F.R. § 1630.2(j)(3) (emphasis added). The evidence shows plaintiff did have a prior diagnosis of PTSD. However, the evidence also shows that Dr. Humes considered plaintiff's PTSD diagnosis and concluded that, as with the agoraphobia diagnosis, his symptoms were "not severe enough to warrant special yard [… ] he is able to be in the dayroom, the court yard area, and dining facilities without any major incidents (or anxiety attacks) and therefore can function just fine in an extension of those, i.e., the regular yard outs." Dkt. 38-1, at 51. Dr. Humes also opines that overall plaintiff "is able to do the things necessary to function on a day-to-day basis without exhibiting symptoms." Dkt. 35, Humes Decl., at 4.

1    has not been attending outdoor recreation because of his anxiety around large groups of people

2    and that this has caused a deterioration in his health.[6]

3         Yet plaintiff does not provide evidence to dispute defendants' evidence that he is able to

4    go to the crowded mess hall for meals, spend time in the day room with numerous other inmates,

5    or sit in the medical waiting room without exhibiting any significant or limiting symptoms.

6    Plaintiff does not specifically explain why he is able to participate in some activities and

7    environments that require him to be around large groups of people but is not able to do so in the

8    yard, gym, or library. Plaintiff contends he "has no choice" but to go to meals and medical

9    appointments but does not dispute Dr. Humes' observation and opinion that plaintiff is able to

10   engage in these activities as well as sit in the day room without experiencing panic attacks or

11   exhibiting significant anxiety symptoms.

12        Plaintiff also does not provide any evidence (beyond general assertions of increased

13   anxiety in crowds and general sleep difficulties[7]) regarding the nature, severity, and duration of

14

15   [6] In a declaration included in his opposition to defendants' motion for summary judgment, plaintiff notes that his
     mental health has deteriorated since commencing this action and that he is experiencing depression and taking
16   medication "for insomnia with the drug trazadone, depression also with trazodone; nightmares and anxiety with
     prazodin; anxiety with clonidine; PTSD and anxiety with sertraline." Dkt. 38, at 80. However, the record shows that
17   at the time plaintiff applied for and was denied the ADA accommodation he sought, the only medication he was
     taking was trazadone to address his sleep issues. *See id.*, at 51, 80. To the extent plaintiff claims he is now
18   experiencing additional mental health challenges which he was not experiencing at the time he was denied the ADA
     accommodation, this is insufficient to raise an issue of fact regarding whether defendants acted with deliberate
19   indifference in denying plaintiff's requested accommodation based on plaintiff's condition and the available records
     and evidence at the time of his application.

20   [7] Plaintiff notes that at the time he applied for the ADA accommodation he was taking medication to help him sleep.
     Dkt. 38, at 80. Sleep is considered a major life activity under the ADA. 42 U.S.C. § 12102(2). Furthermore, under
21   the ADA, the mitigating effects of medication are not to be considered in evaluating whether an impairment
     substantially limits a major life activity. 42 U.S.C. § 12102(4)(E); 29 C.F.R. § 1630.2(j). However, beyond the fact
22   that plaintiff was taking medication to help him sleep at the time, plaintiff offers no specific evidence regarding the
     nature, severity, and duration of his sleep issues, or how this relates to his need for an ADA accommodation for the
23   yard, gym and library. That is, plaintiff offers no evidence that access to this program would be a reasonable and
     necessary accommodation to address his sleep issues. *See Duvall*, 260 F.3d 1124, 1138-39 (9th Cir. 2001) (to show
24   deliberate indifference, plaintiff's burden to "identify specific reasonable and necessary accommodations"
     defendants failed to provide and show defendants' failure to act was "a result of conduct that was more than
     negligent and involves an element of deliberateness."). Furthermore, the medical evidence in the record indicates
     that plaintiff's continued exposure to larger groups of people is beneficial as a form of treatment or therapy for his

25

REPORT AND RECOMMENDATION - 16

the mental health symptoms he experiences or how they substantially limit him from engaging in

a major life activity. Nor does plaintiff provide evidence of specific symptoms he was

experiencing at the time that he conveyed to Dr. Humes or the other defendants, or that they

ignored or failed to consider those symptoms in evaluating him or his ADA accommodation

request. Without more, plaintiff's generalized and conclusory statements that he gets anxious

around large groups of people and experiences sleep difficulties are insufficient to raise a triable

issue of fact as to whether he had a cognizable disability and that he required a reasonable

accommodation in accessing the yard, library, and gym. *See Wilkey v. County of Orange*, 295

F.Supp.3d 1086 (C.D. Cal., Nov. 9, 2017) (plaintiff's conclusory statements that he suffered

from a disability insufficient to withstand summary judgment on ADA claim.).[8]

Even if plaintiff raised a genuine issue of material fact that he was disabled under the

ADA or RA, and presented symptoms of the disability to the defendants, he fails to present any

facts to indicate that defendants acted with deliberate indifference in denying his request for an

ADA accommodation. *See, e.g., Curry v. Tilton*, No. C-07-0775 EMC PR, 2012 WL 967062, at

*12 (N.D. Cal. Mar. 21, 2012) (exclusion from [program] was not based on the fact or perception

that he had a disability and instead was due to the fact that he did *not* have a qualifying

disability); *see Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976 (9th

Cir. 1997) (patron excluded from public transit system's reduced fare program due to his failure

to provide updated medical information failed to establish ADA or Rehabilitation Act violation

because transit system's policy did not discriminate on the basis of a disability and was not

---

mental health issues. The fact that plaintiff disagrees with this conclusion is insufficient, in and of itself, to raise a
genuine issue of material fact as to whether defendants acted with deliberate indifference in denying his request for
an accommodation.

[8] The Court notes that plaintiff also presents no evidence, beyond his conclusory assertions, that his physical health
has deteriorated significantly because he has not been attending yard due to his anxiety.

1    required to make reasonable modifications to the eligibility requirements for patron). Instead the

2    record shows that Dr. Humes came to the conclusion that plaintiff was not disabled and that the

3    requested ADA accommodation for the yard, gym and library was not necessary -- based on his

4    clinical assessment that plaintiff's mental health issues did not interfere with his ability to

5    function on a day to day basis and, in particular, that they did not substantially impact his ability

6    to be around large groups of people.

7        In fact, Dr. Humes' clinical opinion was that, to the extent plaintiff did experience an

8    increase in anxiety in crowds, exposure to such environments would be beneficial as a form of

9    treatment for his symptoms. Defendant Sawyer indicates that in considering plaintiff's local

10   accommodation request, he and the ADA Committee gathered and considered information about

11   plaintiff's circumstances including the opinion of mental health staff that plaintiff was

12   functional, that he would benefit from participating in yard and other activities with other

13   offenders, and that he did not require an accommodation for these activities. Defendant Sawyer

14   states that, based on this information -- and because plaintiff had no difficulty making it to the

15   yard, gym or library -- the ADA Committee denied plaintiff's request for a local

16   accommodation.[9]

17       Plaintiff disagrees with the medical assessment that his mental health issues were not

18   severe enough to qualify as a disability or require the accommodation sought. But, even if

19   plaintiff had raised an issue of fact as to whether he was disabled under the ADA and RA,

20   plaintiff offers no evidence that defendants deliberately denied him access to the ADA program

21   *because of* his disability. Rather, the evidence shows defendants denied plaintiff access to the

22

23   [9] The Court notes that plaintiff disputes that he gave defendant Nickerson permission or asked her to discuss his
     mental health issues with Dr. Humes. Dkt. 38, at 85. However, plaintiff does not appear to allege a separate
24   constitutional violation on this basis and this disagreement is insufficient to raise a genuine issue of *material* fact
     with respect to whether the defendants violated his rights under the ADA, RA, or § 1983 and § 1985.

25

1   program based on the medical evidence indicating that he was not disabled, functional around

2   large groups of people, and that the accommodation he sought was not necessary. Even if

3   defendants were mistaken, or even negligent, in assessing the existence or severity of plaintiff's

4   mental health issues, there is no evidence indicating defendants had knowledge plaintiff was

5   disabled or that an accommodation was necessary. Rather, the evidence shows defendants

6   considered plaintiff's concerns, believed plaintiff was not disabled, that he was not substantially

7   limited in his ability to function on a day to day basis, and that plaintiff's access to the ADA

8   yard, library, and gym, was not a necessary accommodation in light of evidence that he was able

9   to function without apparent limitation in similar environments.

10          Because plaintiff offers no facts or evidence to indicate that the defendants knew that a

11  harm to a federally protected right was substantially likely in excluding him from the ADA

12  program but chose to exclude him anyway, plaintiff fails to raise a genuine issue of material fact

13  as to whether defendants violated his ADA and RA rights to be reasonably accommodated for a

14  disability. Defendants are entitled to summary judgment on plaintiff's ADA and RA claims.

15  **II.    Constitutional Claims**

16          In addition to the ADA and RA claims asserted by plaintiff in his amended complaint,

17  plaintiff also asserts constitutional claims related to the conditions of his confinement. But

18  plaintiff's constitutional claims appear to be based on alleged violations of the ADA. The Ninth

19  Circuit has expressly held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against

20  a State official in [his] individual capacity to vindicate rights created by Title II of the ADA . . . ."

21  *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  Thus, to the extent plaintiff intends to

22  allege § 1983 claims against individual defendants based on violations of the ADA, plaintiff's

23  claims fail and must be dismissed.  To the extent plaintiff's constitutional claims can be construed

24

25

REPORT AND RECOMMENDATION - 19

1   as claims independent of his ADA claims, his claims also fail because plaintiff has not established

2   any violation of a federal constitutional right.

3         In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that

4   he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii)

5   that the violation was proximately caused by a person acting under color of state law.  *See*

6   *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is

7   satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

8   another's affirmative act, or omitted to perform an act which he was legally required to do that

9   caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing

10  *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

11       **A.  Inadequate Medical Care/Conditions of Confinement**

12        Defendants also move for summary judgment on plaintiff's constitutional claims arguing

13  that plaintiff cannot demonstrate defendants violated his Eighth Amendment rights and that they

14  are entitled to qualified immunity on these claims.

15        Unless plaintiff makes a two-part showing, qualified immunity shields government

16  officials from liability for civil damages. The plaintiff must show both: The official(s) violated a

17  federal statutory or constitutional right, and -- at the time of the alleged act or failure to act there

18  was clearly established law that defined the contours of the federal right objectively putting the

19  official(s) on notice – i.e., every reasonable official would understand that what they are doing is

20  unlawful. *District of Columbia v. Wesby,* 138 S.Ct. 577, 589 (2018); *Emmons v. City of*

21  *Escondido,* 921 F.3d 1172, 1174 (9th Cir. 2019) (per curiam).

22        When qualified immunity is reviewed in the context of a defense motion for summary

23  judgment, the evidence must be considered in the light most favorable to the plaintiff with

24

25

respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right" then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

To state an Eighth Amendment claim based on prison medical treatment under 42 U.S.C. § 1983, a plaintiff must demonstrate deliberate indifference to his serious medical needs, a violation of the proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical needs, and (2) the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32–35 (1993); *McGuckin*, 974 F.2d at 1059. A mental health condition may qualify as a serious medical need. *Doty v. Cnty. of Lassen*, 37 F.3d 540 (9th Cir. 1994).

A plaintiff satisfies the second requirement that defendant's response to the need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). A prison official's response to the prisoner's serious medical need is "deliberately indifferent" if the official "knows of and disregards an

1  excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he

2  official must both be aware of facts from which the inference could be drawn that a substantial

3  risk of serious harm exists, and he must also draw the inference." *Id*. Existence of this subjective

4  state of mind may be inferred "in the usual ways, including inference from circumstantial

5  evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the

6  very fact that the risk was obvious." *Id.* at 842 (internal citations omitted).

7       Deliberate indifference may manifest through denial, delay or intentional interference

8  with a prisoner's medical treatment, *Estelle*, 429 U.S. at 104–5; *see also Broughton v. Cutter*

9  *Labs*., 622 F.2d 458, 459-60 (9th Cir. 1980), "or it may be shown by the way in which prison

10 physicians provide medical care," *Jett*, 439 F.3d at 1096. Furthermore, a physician need not fail

11 to treat a prisoner altogether in order to violate that prisoner's Eighth Amendment rights. *Ortiz v.*

12 *City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). Even so, the indifference to a plaintiff's

13 medical needs must be more than "[m]ere 'indifference,' 'negligence,' or 'medical malpractice.'"

14 *Broughton*, 622 F.2d at 460 (citing *Estelle*, 429 U.S. at 105–06). A prisoner need not show his

15 harm was substantial, but doing so provides additional support for the prisoner's claim that the

16 defendant was deliberately indifferent to his needs. *Jett*, 439 F.3d at 1096.

17       Similarly, a prison official violates the Eighth Amendment with respect to the conditions

18 of a prisoner's confinement only when two requirements are met: (1) the inmate must show that

19 he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison

20 official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825

21 (1994). Thus, the deprivation alleged by the inmate must be, objectively, "sufficiently serious",

22 and subjectively, the prison officials must know of and must deliberately disregard the risk of

23 harm to the inmate. *Farmer*, 511 U.S. at 834, 842. If one of the components is not established,

24

25

1   the court need not inquire as to the existence of the other. *Helling v. McKinney*, 509 U.S. 25, 35

2   (2018).

3        Only those conditions of confinement that deny a prisoner "the minimal civilized

4   measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

5   violation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). "[O]rdinarily the lack of

6   outside exercise for extended periods is a sufficiently serious deprivation" for Eighth

7   Amendment purposes. *LeMaire*, 12 F.3d at 1457. If the prisoner can show his deprivation was

8   objectively sufficiently serious, he must next "make a subjective showing that the deprivation

9   occurred with deliberate indifference to [his] health or safety." *See, e.g.*, *Foster v. Runnels*, 554

10  F.3d 807, 812 (9th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834).

11       Here, plaintiff alleges, generally, that his health has deteriorated because he has not been

12  attending yard or recreation due to his anxiety around large groups of people. However, plaintiff

13  presents no facts to indicate defendants knew of and disregarded an excessive risk to his health or

14  safety. Rather, the record shows that the defendants involved in determining whether plaintiff

15  required an ADA accommodation were of the opinion, based on the medical evidence, that, to the

16  extent plaintiff had mental health issues, they did not require any special accommodation to access

17  the yard, gym, or library. And, in fact, the defendants considered that plaintiff's continued

18  exposure to large groups of people would be medically beneficial and therapeutic. In sum, there is

19  no evidence in the record to indicate that defendants knew of any excessive risk to plaintiff's health

20  or safety in denying his application for an ADA accommodation. Based on the record before it,

21  the Court finds that no reasonable trier of fact could conclude that defendants acted with deliberate

22  indifference to plaintiff's Eighth Amendment rights. Accordingly, as plaintiff fails to raise a

23  genuine issue of material fact as to whether his constitutional rights were violated by defendants'

24

25

1  conduct, defendants are entitled to summary judgment and qualified immunity on plaintiff's Eighth

2  Amendment claims.[10]

3  **III.    Conspiracy Claims and Claims Against Defendant Sinclair**

4       Plaintiff's second amended complaint also asserts causes of action under 42 U.S.C. § 1985,

5  as well as claims against DOC Secretary Stephen Sinclair. But, plaintiff concedes in his response

6  to defendants' summary judgment motion that both his conspiracy claims and his claims against

7  defendant Sinclair are not viable. Dkt. 38, at 15, 19. All conspiracy claims and all claims against

8  defendant Sinclair should therefore be dismissed.

9                    IN FORMA PAUPERIS STATUS ON APPEAL

10      The Court must also decide whether plaintiff's *in forma pauperis* status should continue

11 on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial

12 court certifies in writing that it is not taken in good faith").  The Court must determine whether

13 appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be

14 granted.  *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

15      While the Court was not persuaded on the merits of plaintiff's claim, there is no evidence

16 that an appeal would be frivolous or taken in bad faith. Accordingly, the Court recommends that

17 *in forma pauperis* status should continue on appeal.

18                              CONCLUSION

19      Based on the foregoing, the Court concludes plaintiff has failed to sufficiently rebut

20 defendants' summary judgment showings regarding plaintiff's ADA, RA and Eighth

21 Amendment claims, and plaintiff has conceded his conspiracy claims and claims against

---

[10] As plaintiff fails to meet his burden with respect to the first prong of the qualified immunity analysis, the Court need not address the second prong.

REPORT AND RECOMMENDATION - 24

defendant Sinclair are not viable and should be dismissed. Accordingly, the undersigned recommends the Court GRANT defendants' motion for summary judgment and DISMISS plaintiff's complaint with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **December 6, 2019**, as noted in the caption.

Dated this 18th day of November, 2019.


*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge